UNITED STATES *v.* WM. A. FOSTER & CO., INC. (STANDARD ROLLING MILLS, INC.) (No. 4523)[1]

United States Court of Customs and Patent Appeals, May 7, 1946

*Paul P. Rao*, Assistant Attorney General (*Richard F. Weeks*, special attorney, of counsel), for the United States.
*Eugene R. Pickrell* for appellee.

[Oral argument February 5, 1946, by Mr. Weeks and Mr. Pickrell]

_____

[1] C. A. D. 336.

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court (Third Division) in reappraisements Nos. 129024–A, 129025–A, 129026–A, 129027–A, and 131308–A.

The merchandise involved consists of eight different gauges or thicknesses of so-called "plain white aluminum foil," imported in rolls of varying widths. It was imported at prices ranging from 41 to 47 cents per pound f. o. b., New York, duty paid, the prices apparently varying in accordance with the gauge and width of the foil.

In entering the merchandise, the importer deducted duty and other nondutiable items from the invoice prices.

The merchandise was appraised by the local appraiser on the basis of alleged foreign values, which, it is stated in the brief of counsel for the Government, varied "between RM. 2.80 per kilogram, less 2% plus packing, and RM. 3.50 per kilogram less 2%, plus packing."

The trial court and, on appeal, the appellate division of the Customs Court held that the entered values were the export and dutiable values of the merchandise. Each of those tribunals also held that the merchandise had no foreign values because, according to the record, the sales of the involved and like merchandise for consumption in Germany were controlled by a cartel which limited them to certain organizations as well as the use to which the merchandise might be put.

Foreign value is defined in subsection (c) of section 402 of the Tariff Act of 1930, as amended by the Customs Administrative Act, 1938, as follows:

(c) FOREIGN VALUE.—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

Export value is defined in subsection (d) of section 402, *supra*, as follows:

(d) EXPORT VALUE.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

The sole issue before us is whether there is any substantial evidence to support the judgment of the appellate division of the Customs Court holding that the entered values are the export values of the merchandise in question.

The importer introduced in evidence the testimony of two witnesses (Bert C. Schellenberg, employed by the firm of Bradley & Baker, importer and agent for the exporter of the involved merchandise, and Donald E. Campbell, vice president of Standard Rolling Mills, Inc., purchaser of the involved merchandise) and several exhibits.

The Government submitted no evidence.

The only exhibits introduced by appellee which it is necessary to consider here are numbered 3, 4, 5, and 6; Exhibit 3 being an affidavit of Dr. Rudolf Görmandt, executed October 18, 1939; and Exhibits 4, 5, and 6 being affidavits of one Otto Joeckel, managing director of Rheinische Blattmetall Akteingesellschaft, manufacturer and exporter of the involved aluminum foil, the three latter exhibits being executed on the following dates, respectively, Exhibit 4, November 15, 1939, and Exhibits 5 and 6, June 11, 1940.

Counsel for the Government here contend that there is no substantial evidence of record to sustain the judgment of the appellate division of the Customs Court, and in their brief point out that the testimony of the witnesses Schellenberg and Campbell is clearly not sufficient to warrant a holding that the entered values are the export values of the involved merchandise.

It may be said here that neither of those witnesses was very definite in his testimony, a considerable portion of which indicated quite clearly that neither of them remembered precisely all of the facts necessary to establish export values. However, it appears from the testimony of the witness Campbell, and that testimony is not questioned here by counsel for the Government, that the price per pound did not vary, *regardless of the amount sold*. In other words, although the evidence is conflicting as to the usual wholesale quantities, the price per pound varied only in accordance with the width and gauge, it did not depend upon the quantity sold.

That each of the witnesses, Schellenberg and Campbell, testified truthfully and to the best of his knowledge is not questioned.

In support of the statement hereinbefore made that there is no foreign value for merchandise like that here involved, it appears from appellee's Exhibits 3 and 5 that sales and offers for sale of aluminum foil, manufactured and sold for home consumption in Germany, were restricted not only as to purchasers who might buy, but also as to the use to which the foil might be put. Stated differently, it appears from those exhibits that the purchasers of aluminum foil for home consumption in Germany were limited to "converters" and consumers,

and that aluminum foil was not freely offered for sale *to all purchasers for home consumption in Germany.* Furthermore, such sales were restricted in that the purchasers were not permitted to resell. Accordingly, there is substantial evidence of record to establish that the merchandise in question had no foreign values within the purview of subsection (c) of section 402, *supra.*

It appears from appellee's Exhibit 6 that at, prior to, and subsequent to, the exportation of the involved merchandise the exporter and other manufacturers in Germany of merchandise like that here involved freely offered such merchandise for sale to all purchasers for export to the United States in the usual wholesale quantities and in the ordinary course of trade at prices which, with the duty paid and other proper elements of deduction, correspond to the prices paid in the instant case by the Standard Rolling Mills., Inc, and that such offers for sale were not limited to the Standard Rolling Mills, Inc.

We have given careful consideration to all of the arguments presented here by counsel for the Government, but are of opinion, for the reasons hereinbefore stated, that there is substantial evidence of record to sustain the judgment of the appellate division of the Customs Court holding that the entered values are the export and dutiable values of the involved merchandise. The judgment is, accordingly, *affirmed.*